IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

LINDA DELBERT,

       Plaintiff,

v.                              Civil Action No. 5:11CV83
                                          (STAMP)

IVAN F. GORBY, JOHN DOE employees,
representatives and/or agents of
ALLSTATE INSURANCE COMPANY and
ALLSTATE INSURANCE COMPANY,

       Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION TO REMAND,
GRANTING IN PART AND DENYING IN PART
DEFENDANT ALLSTATE'S MOTION TO DISMISS
AND DIRECTING PLAINTIFF TO FILE
A MORE DEFINITE STATEMENT**

I.   Procedural History

The plaintiff, Linda Delbert, filed this civil action in the Circuit Court of Marshall County, West Virginia. The plaintiff seeks compensatory and punitive damages from the defendants as a result of an automobile accident and of interactions with defendants John Doe employees and representatives of Allstate Insurance Company (hereinafter "John Doe") and defendant Allstate Insurance Company (hereinafter "Allstate") ensuing from said automobile accident.

The complaint includes assertions that both the plaintiff and defendant Ivan F. Gorby (hereinafter "Gorby") are, and have at all times relevant to this action been residents of Marshall County, West Virginia. The complaint also suggests that the John Doe defendants may be residents of West Virginia, as at least some of

them may be employed at Allstate's Charleston, West Virginia branch office.   Defendant Allstate removed the action to this court, alleging that defendant Gorby was fraudulently joined because a release was secured from Ms. Delbert settling all possible claims that she had against him stemming from the accident.   The notice of removal also stated that the citizenship of John Doe defendants should not be considered for purposes of removal.   At this time, no John Doe defendants have been served, and accordingly, none have made appearances in this case.

After removing the action, Allstate filed a motion to dismiss the complaint.   Plaintiff failed to respond to Allstate's motion to dismiss, but instead filed a motion to remand.   Allstate filed a response in opposition to the plaintiff's motion to remand. Plaintiff Delbert filed no reply to this response.

The motion to remand and the motion to dismiss are pending before this Court and are ripe for disposition.   Having reviewed the parties' pleadings and the relevant law, this Court finds that the plaintiff's motion to remand must be denied and defendant Allstate's motion to dismiss must be granted in part and denied in part.

## II.   Facts[1]

On or about May 13, 2009, an automobile driven by defendant Gorby was involved in a collision with another automobile

---

[1]For the purposes of this opinion, this Court adopts, for the most part, the facts as set forth by the plaintiff in her complaint.

(hereinafter "the accident") on a public highway at the intersection of West Virginia Route 2, Lafayette Avenue, and Twelfth Street in Moundsville, West Virginia. At the time of the accident, the plaintiff was the passenger in defendant Gorby's automobile and was injured in the collision. The plaintiff alleges in Count One of her complaint that her injuries are a direct and proximate result of defendant Gorby's negligent operation of his vehicle, and thus he is liable to her under a negligence theory.

Defendant Allstate was Mr. Gorby's automobile insurance provider at the time of the accident. Following the accident, the plaintiff filed a claim with Allstate for her injuries. Defendant Allstate informed the plaintiff of her eligibility for medical coverage under Mr. Gorby's automobile policy and informed her of the medical coverage policy limits to which she was entitled. Allstate paid the plaintiff's medical bills directly under the first party medical coverage, up to the policy limit of $2,000.00. In addition to the medical payments, Allstate provided the plaintiff with a check for $1,800.00 dated May 19, 2009. Plaintiff cashed this check on July 10, 2009.

The plaintiff alleges in Counts Three, Five and Six of her complaint[2] that John Doe defendants were assigned various adjusters, managers, and/or representatives of Allstate to handle

---

[2]Count Two outlines plaintiff's damages allegedly attributable to the automobile collision of March 13, 2009. It does not introduce any causes of action, and thus is irrelevant for purposes of this opinion. The complaint does not contain a Count Four.

3

the plaintiff's claim regarding the accident.  She further alleges that defendant Allstate and perhaps John Doe defendants encouraged the plaintiff to not retain a lawyer and/or showed her empathy throughout her claims process as part of a designed program utilized by Allstate and encouraged by Allstate's consulting firm, McKinsey and Company.  The plaintiff claims that this designed program was utilized by defendant Allstate as a regular business practice in order to settle claims for amounts that are lower than the highest amount that may be available to the claimant.  The plaintiff claims that these practices, as applied to her, make Allstate and the John Doe defendants liable to her under theories of fraudulent misrepresentation, unauthorized practice of law, statutory and common law bad faith, the tort of outrage, equitable estoppel and unjust enrichment.

### III.  Applicable Law

A.  Motion to Remand

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter.  28 U.S.C. § 1441.  Federal courts have original jurisdiction over primarily two types of cases: (1) those involving federal questions under 28 U.S.C. § 1331 and (2) those involving citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs pursuant to 28 U.S.C. § 1332(a).  The party seeking removal bears the burden of establishing federal jurisdiction.  See Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151

(4th Cir. 1994). Removal jurisdiction is strictly construed due to "significant federalism concerns," implicated by abrogating a state court of the ability to decide a case over which it has jurisdiction. <u>Id.</u> Thus, if federal jurisdiction is doubtful, the federal court must remand. <u>Id.</u>

However, when a defendant removes a case that, on its face, does not present complete diversity, courts are permitted to utilize the doctrine of fraudulent joinder to examine the record in more depth to determine whether the non-diverse parties are real parties in interest to the action. <u>Mayes v. Rapoport</u>, 198 F.3d 457, 461 (4th Cir. 1999). Under the doctrine of fraudulent joinder, a defendant may remove a case on the basis of diversity jurisdiction even if a non-diverse defendant is a party to the case so long as the removing party can prove that the non-diverse defendant was fraudulently joined to the action. <u>Id.</u> Fraudulent joinder "effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." <u>Id.</u>

B. <u>Motion to Dismiss</u>

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to raise the defense of "failure to state a claim upon which relief can be granted" as a motion in response to a plaintiff's complaint before filing a responsive pleading.

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the factual allegations

contained in the complaint as true. Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'" Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances, as the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) only mandate "a short and plain statement of a claim showing that the pleader is entitled to relief." Conley v. Gibson, 355 U.S. 41, 47 (1957). Still, to survive a motion to dismiss, the complaint must demonstrate the grounds to entitlement to relief with "more than labels and conclusions . . . factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007).

## IV.  Discussion

A.  Motion to Remand

In their notice of removal, the defendants argued that this Court has jurisdiction because defendant Gorby was fraudulently joined in the action. To establish fraudulent joinder, "the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is no possibility that the plaintiff would be able to establish a cause

of action against the in-state defendant in state court.'" Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)) (emphasis in original). A claim of fraudulent joinder places a heavy burden on the defendants. Marshall, 6 F.3d at 232. "[T]he defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor. A claim need not ultimately succeed to defeat removal; only a possibility of right to relief need be asserted." Id. at 232-33 (internal citations omitted). Further, the burden is on the defendants to establish fraudulent joinder by clear and convincing evidence. Rinehart v. Consolidated Coal Co., 660 F. Supp. 1140, 1141.

However, when fraudulent joinder is alleged, a court is permitted to examine the entire record by any means available in order to determine the legitimacy of the claim against the challenged party, including taking into consideration affidavits submitted by the parties. Id., and Boss v. Nissan N. Am., 228 F. App'x 331, 336 (4th Cir. 2007)(unpublished).

Here, the defendants do not allege outright fraud in the plaintiff's pleadings. Instead, the defendants argue that the plaintiff simply does not assert a claim against Mr. Gorby. Therefore, to defeat the plaintiff's motion to remand, the defendants must establish by clear and convincing evidence that, even resolving all issues of fact and law in the plaintiff's favor,

the plaintiff has not alleged any possible claim against defendant Gorby.  The defendants have met this burden.

In support of her motion to remand, the plaintiff argues that defendant Gorby is not fraudulently joined to this action because Allstate never secured a release of defendant Gorby's liability for the accident due to the fact that no full and final release was every signed by plaintiff Delbert, and because the $1,800.00 check that Ms. Delbert cashed was actually to "assist her in paying for her ongoing medical treatment," and was not a settlement check. Additionally, the plaintiff argues that, if a release was secured, Allstate committed fraud in the fact or exercised undue influence on the plaintiff in securing such release, and thus the release should be unenforceable.

In response, the defendants Allstate and Gorby assert that Allstate has met its burden of proving that defendant Gorby was fraudulently joined in this action.  The defendants state that all negligence claims that plaintiff may have had against Mr. Gorby were fully settled and released under the doctrine of accord and satisfaction when Ms. Delbert cashed the $1,800.00 check tendered to her.  They also maintain that no fraud or undue influence was committed that would nullify the release.  The defendants also argue that, even if accord and satisfaction was wrongfully procured, the plaintiff must return the settlement funds in order to properly challenge the settlement.  This Court addresses each of these issues in turn.

Under the common law doctrine of accord and satisfaction, a debt is satisfied and the debtor released from liability when a creditor accepts partial or substituted performance of a disputed claim in the place of the original debt.  See Owen v. Wade, 185 Va. 118 (1946), Charleston Urban Renewal Auth. v. Stanley, 176 W. Va. 591, 593-95 (1985), Painter v. Peavy, 192 W. Va. 189 (1994), and Richards v. Kees, 212 W. Va. 375 (2002).  After the debtor has fully performed the substituted performance (the "accord"), a new contract is formed between the parties, in which the creditor wholly releases the debtor from the original debt in exchange for the performed accord.  This new contract in which the debtor is released is called the satisfaction.

The Supreme Court of Appeals of West Virginia applies a three-pronged test for establishing the existence of a valid accord and satisfaction.  The party asserting the defense of accord and satisfaction must prove that (1) "'consideration to support an accord and satisfaction'" was given to the plaintiff by the defendant, (2) "'an offer of partial payment in full satisfaction of a disputed claim'" was made, and (3) that the creditor made "'acceptance of the partial payment . . . with knowledge that the debtor offered it only upon the condition that the creditor accept the payment in full satisfaction of the disputed claim or not at all.'"  Haynes v. DaimlerChrysler Corp., 2011 W. Va. LEXIS 45, 16 (quoting Charleston Urban Renewal Authority, 176 W. Va. 591).

As a threshold matter, it is important to note that, in order to establish a valid accord and satisfaction, it is not necessary

for the parties to have signed any written or formal full and final release, as plaintiff contends.  It is sufficient to release a debtor from liability if the elements of the three-pronged test for accord and satisfaction can be established by the party invoking the defense.  See Haynes, 2011 W. Va. LEXIS 45; Painter, 192 W. Va. 189; and Slack v. United Fire & Casualty Co., 2009 U.S. Dist. LEXIS 74116, 6-11 (E.D. La. 2009).

In the case at hand, the first element of this test requiring consideration is easily satisfied by the $1,800.00 check tendered to the plaintiff.  However, the second and third elements require further discussion.

Element two requires that the party seeking to prove accord and satisfaction show that it offered partial satisfaction to act as a substitution for full performance.  The defendants have met their burden on this element as well.

First, the actual check states, directly under the plaintiff's name at the top of the check, "IN PAYMENT OF: LOSS OF ON 5/12/2009."  Next, the cover letter that accompanied the check conspicuously terms the check as, "In payment for Bodily Injury Liability for Date of Loss 5/12/2009."

Allstate also submitted an affidavit by Daniel J. Bailey, the staff claims service adjuster assigned to the plaintiff's bodily injury liability claim resulting from the accident.  The affidavit states that Mr. Bailey explained the offer that he was giving to the plaintiff was in settlement of her bodily injury claim, and that the offer was not for medical expenses.  He also states that

10

he informed Ms. Delbert that the settlement would "close her claim for bodily injury coverage."

The plaintiff makes the assertion that the check was for ongoing medical bills rather than liability.  In support of this claim, she says that, "[i]t is a customary practice in the insurance industry to pay undisputed policy proceeds and it is not unusual for an insurer to authorize payment of medical bills arising from a covered loss although treatment is ongoing." However, she offers no evidence that this is an accurate statement. The only citation given to support it, West Virginia Insurance Regulation § 114-4-6.2, is actually not at all related to the argument that the plaintiff is attempting to make.  West Virginia Insurance Regulation § 114-4-6.2 does not discuss third party coverage payments by insurance companies for "helping with ongoing medical bills" without releasing liability of an insured.  In fact, the section focuses solely on settlement offers.[3]

Beyond the lack of support for the plaintiff's assertion that checks like this one are often given to claimants without a release, the actual communication that Allstate had with the

---

[3]In fact, the language quoted by the plaintiff in her brief in support of her motion to remand is actually that of West Virginia Insurance Rule § 114-14-6.4, not § 114-14-6.2, as cited in the brief.  The section that is actually quoted, as opposed to the section cited, is entitled "Offers of settlement" and discusses the requirement that insurers settle claims for reasonable amounts, rather than insisting upon litigating and drawing out claims which they know to be undisputed as to liability.  This is precisely what Allstate did in this case.  The plaintiff has made no accusation that Allstate made a settlement offer that was "unreasonably low" or that it refused to make an offer on a case that was undisputed as to liability.  W. Va. Ins. R. § 114-14-6.4(a)-(b).

11

plaintiff in this case during the course of distributing the medical benefits coverage to which she was entitled further refutes Ms. Delbert's argument that this particular check was not a release.[4]

It is clear for all of the above described reasons that Allstate's tender of the check for $1,800.00 was intended to be an offer of partial payment to serve as a satisfaction of the full liability which it may have owed to the plaintiff on Mr. Gorby's behalf.

The defendants have also met their burden of proving the third and final prong of the test; that the plaintiff accepted the partial payment with "'knowledge that [Allstate] offered it only upon the condition that the creditor accept the payment in full satisfaction of the disputed claim or not at all.'" Haynes, 2011 W. Va. LEXIS 45 at 16. The plaintiff argues against accord and satisfaction, stating that she believed the $1,800.00 payment to be for medical bills. However, based upon the totality of the evidence presented in the record, this Court finds the plaintiff's assertions unconvincing.

It is true that the language on the check itself is not clear enough on its own to support a finding that the plaintiff was aware that she was accepting a full and final settlement of her claims.

_____

[4]The communications between Ms. Delbert and Allstate regarding the medical coverage benefits that Ms. Delbert received are fully examined and outlined in the discussion of whether Ms. Delbert was aware that the check that she cashed released Mr. Gorby from further liability for the accident.

12

See Painter, 192 W. Va. at 194.  However, the language on the cover letter sent to Ms. Delbert in conjunction with the check does present stronger evidence that it was clear that the check constituted a release, and this court finds that the entirety of the correspondence between Ms. Delbert and Allstate makes it clear that the check constituted a release.

It is clear from the evidence presented by both parties that defendant Allstate explained to the plaintiff that her medical bills would be paid up to defendant Gorby's $2,000.00 medical policy limit, and would be paid directly as she forwarded the bills to Allstate.  Further, throughout the time that Ms. Delbert was being treated and until the time that policy limits were exhausted, she was furnished with payment updates along with the remaining benefits under the policy until they were exhausted, of which she was informed at a time before she cashed the $1,800.00 check in question.  The West Virginia Supreme Court of Appeals considers evidence of medical bill submission and payment to be quite significant in an inquiry into an insurance claimant's awareness of the character of a settlement check.  In Richards v. Kees, 212 W. Va. 375, 377 (2002), the Court found that an insurance claimant had not executed a valid accord and satisfaction because the claimant was unaware that the check that he cashed was a release.  The court focused on the factual differences between that case and Peavy, where it had decided that an accord and satisfaction did exist, and highlighted that in Kees, unlike in Peavy, there had been no medical bills submitted and paid for, nor had there been any

13

discussion about a medical claim relating to the accident. Id. Here, the opposite situation is indicative of the opposite conclusion.

Additionally, the defendants submitted the previously discussed affidavit of Daniel Bailey, the claims adjuster who negotiated Ms. Delbert's liability claim. In the affidavit, Mr. Bailey avers that he explained the difference between medical coverage and bodily injury liability coverage and that Ms. Delbert informed him that she would not be seeking any further medical treatment. Further, he asserts that he offered her $1,800.00 to settle her claim, explained that the payment would be in exchange for full and final settlement of Ms. Delbert's bodily injury liability claim, and received an acknowledgment and acceptance from the plaintiff. Finally, he states that he informed the plaintiff that the acceptance of the check "close[d] her claim against Mr. Gorby." This affidavit was submitted in the defendants' response to the plaintiff's motion to remand and has gone unchallenged by the plaintiff. See Boss, 228 F. App'x at 336 (quoting Legg v. Wyeth, 428 F.3d 1317, 1323 (11th Cir. 2005) ("When the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot resolve the facts in the Plaintiff's favor based solely upon unsupported allegations in the Plaintiff's complaint."). Therefore, all of this evidence, taken as a whole, leads to the conclusion that an accord and satisfaction existed and that Ms. Delbert released Mr. Gorby from any liability for the accident.

Having established that a valid accord and satisfaction contract exists between the parties, the Court now turns to the plaintiff's argument for rescission on the grounds that the release was procured through either undue influence or actual or constructive fraud in fact.

The defendants argue that the plaintiff cannot maintain such arguments because she continues to retain the settlement funds that were tendered to her in exchange for the release of Mr. Gorby.  On July 10, 2009, the plaintiff cashed the settlement check tendered to her by Allstate.  Based upon the evidence before the Court, the plaintiff continues to retain those funds and has not offered to return them.

It is fairly well established law in West Virginia that, "in the absence of fraud . . . in the procurement," an action for rescission of a settlement cannot succeed unless the party seeking to avoid the release "'first return[s] or tender[s] the consideration paid him.'"  Crawford v. Ridgely, 143 W. Va. 210, 217-18 (1957) (quoting 45 Am. Jur., Release § 53).  See also McCary v. Monongahela Valley Traction Co., 97 W. Va. 306, 308-09 (1924), Janney v. The Virginian Railway Co., 119 W. Va. 249 (1937), and Adams v. Moore Bus. Forms, Inc., 224 F.3d 324, 331 (4th Cir. 2000).

Courts have uniformly found that the requirement of tender in order to effect a rescission exists when rescission is based upon allegations of duress and mental incompetency.  In Carroll, parents sought to rescind a settlement that was procured by an insurance

15

adjuster after the parents learned that the undertaker would not release their six-year-old daughter's body for burial until he had been paid.  The court held that, despite the fact that the adjuster knew of the parents' inability to claim the body of their daughter without the insurance proceeds, his behavior could not be attacked to rescind the settlement unless the parents returned the funds received through the settlement.  121 W. Va. at 219-22.  The factual situation of possible undue influence in this case is not anywhere near that which existed in Carroll, and thus it seems clear that this court must find that the plaintiff is unable to attack the release based upon undue influence because she has retained the settlement funds.

That being said, tender is arguably not a condition precedent to allegations of fraud in fact, under the theory that these contracts are void ab initio, rather than voidable at the discretion of the aggrieved party.  See McCary, 97 W. Va. at 309.  However, the plaintiff has failed to establish any evidence to support her allegations that Allstate adjusters told her that she was not settling her case where Allstate has offered unchallenged testimony of the adjuster who negotiated the settlement averring that the plaintiff was informed of the exact opposite.  See Boss, 228 F. App'x at 336 (quoting Legg, 428 F.3d at 1323).

This Court concludes that a valid accord and satisfaction exists releasing defendant Gorby from liability.  Accordingly, Mr. Gorby, the only nondiverse party in this action, was fraudulently joined and the plaintiff's motion to remand is denied.

16

B.   <u>Motion to Dismiss</u>

In her complaint, the plaintiff raises a myriad of claims against Allstate, including fraudulent misrepresentation, breach of fiduciary duty, unauthorized practice of law, the tort of outrage and statutory and common law bad faith.  In its motion to dismiss, defendant Allstate argues that the plaintiff has failed to demonstrate her right to recovery under any of the claims.

As to the bad faith claims, Allstate maintains that it owed no duty of good faith to Ms. Delbert because she was not a party to the insurance contract between Allstate and Mr. Gorby. Additionally, Allstate asserts that statutory third-party bad faith actions were abolished in West Virginia.  Finally, as to the other claims against it, Allstate asserts that the plaintiff has failed to allege facts sufficient to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).  While, for the following reasons, the Court agrees with Allstate with regard to the bad faith claims in the plaintiff's complaint, it grants the plaintiff leave to file a more definite statement with regard to the remaining claims that she has alleged against defendant Allstate.

A duty to act in good faith arises when a special relationship has been formed between two parties, and is derived in insurance claims from the contractual relationship that an insurer has with an insured.  As such, in West Virginia, a common law duty to act in good faith is recognized between insurers and insureds.  <u>Elmore v. State Farm Mutual Automobile Ins. Co.</u>, 202 W. Va. 430, 434 (1998). Through this same logic, such a duty does not run under West

17

Virginia law to third party claimants.   In Elmore, the West Virginia Supreme Court of Appeals based is rationalization of a duty of good faith running between insurers and insureds on previous case law finding that "'when an insured purchases a contract of insurance, he buys insurance, not . . . litigation.'" Id. at 433 (quoting Hayseeds, Inc. v. State Farm Fire & Cas., 177 W. Va. 323 (1986)).   As such, the Court found that "[i]n the absence of such a relationship, there is simply nothing to support a common law duty of good faith."

The facts of Elmore which did not sway the West Virginia Supreme Court to find a duty of good faith to third parties are informative here.   In that case, a third party claimant, whose pregnant wife and unborn child had been killed in a car accident caused by State Farm's insured, was told not to retain a lawyer in the settlement process and was also told that the liability policy limits had been exhausted through the settlement when nearly $50,000.00 actually remained.   As this case alleges similar, if less egregious, behavior on the part of Allstate, and is a situation much less tragic than that surrounding Elmore, this Court is not convinced that the West Virginia Supreme Court of Appeals would find differently based upon the facts presented here.   As such, Allstate cannot be liable to Ms. Delbert under common law bad faith, and this claim is dismissed under Federal Rule of Civil Procedure 12(b)(6).

A similar finding must result with regard to the plaintiff's statutory bad faith claim.   The West Virginia Unfair Trade

18

Practices Act ("UTPA"), the statutory insurance bad faith statute in West Virginia, had in the past provided a cause of action for third parties to bring bad faith suits against insurers. However, on July 8, 2005, West Virginia Code § 33-11-4A became effective. This section of the UTPA was adopted to eliminate a private cause of action by third parties for bad faith or unfair settlement of a claim. The clear and plain language of the section leaves no room for interpretation as to whether the plaintiff may recover on her statutory bad faith claim:

> (a)  A third-party claimant may not bring a private cause of action or any other action against any person for an unfair claims settlement practice. A third-party claimant's <u>sole remedy</u> against a person for an unfair claims settlement practice or the bad faith settlement of a claim is the filing of an administrative complaint with the Commissioner . . .

W. Va. Code § 33-11-4A (emphasis added).

Accordingly, no statutory bad faith claim exists as to this plaintiff under West Virginia law, and this claim must be dismissed under Federal Rule of Civil Procedure 12(b)(6).

As to all claims other than the plaintiff's bad faith claims, the Court denies the defendants' motion to dismiss as the Court cannot say with confidence that, under the facts alleged, the plaintiff is not entitled to relief under any of the claims. However, as the plaintiff's complaint is exceedingly vague and fails to state facts that on their face, entitle her to relief with sufficient specificity as to allow defendant Allstate to reasonably answer the complaint, the plaintiff is directed to file a more definite statement pursuant to Fed. R. Civ. P. 12(e). The

19

statement should clearly delineate each legal claim that Ms. Delbert intended to bring against defendant Allstate and it should describe the claims practices that the defendant utilized in handling Ms. Delbert's claim <u>specifically</u> that create her causes of action, as well as how and when they were used <u>in her claim</u>. Additionally, the statement should set forth allegations of specific conversations and communications between defendant Allstate and Ms. Delbert that create liability for the claims raised in the complaint.

## V.   <u>Conclusion</u>

For the reasons stated above, the plaintiff's motion to remand is DENIED.  Defendant Ivan F. Gorby is DISMISSED from this action WITH PREJUDICE.  Defendant Allstate Insurance Company's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is GRANTED as to the plaintiff's common law and statutory bad faith claims and DENIED as to all remaining claims.  The plaintiff is further DIRECTED to file a more definite statement as to all remaining claims on or before October 12, 2011.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to counsel of record herein.

DATED:    September 28, 2011


<u>/s/ Frederick P. Stamp, Jr.   </u>
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE


20